IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WHITNEY MCQUEEN and JENNY WESENBERG, Individually and a Heirs to the Estate of ALEC MCQUEEN, Deceased, | |
| Plaintiffs, vs. | MEMORANDUM DECISION AND ORDER |
| ARAMARK CORPORATION, a Delaware Corporation; ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC, a Delaware limited liability company; and JOSHUA SMITH, and Individual, | Case No.  2:15-CV-492-DAK |
| Defendants. | |

This matter is before the court on the Defendant Aramark Sports and Entertainment Services, LLC's ("Aramark S&E's") Motion for Judgment on the Pleadings Re: Jurisdiction. A hearing on the matter was held on March 23, 2016. At the hearing, Plaintiffs were represented by Peter Summerill and Colin King. Aramark S&E was represented by Adam Pace and Korey Rasmussen. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs Whitney McQueen and Jenny Wesenberg are Utah residents and the surviving parents and heirs of Alec McQueen. Aramark Corporation and Aramark S&E are Delaware

1

corporations doing regular business in Utah with their principal places of business in Pennsylvania.

On June 10, 2014, Alec McQueen jumped into the water at Bullfrog Marina in Lake Powell, received an electric shock, and eventually drowned. His friend and emergency responders also received electric shocks when trying to rescue him. A later investigation determined that the electric shock came from an amperage outlet, maintained by Aramark S&E, through a boat, owned by Joshua Smith, and was discharged into the water around the boat. Plaintiffs allege that the outlet was neglected and not maintained.

On July 13, 2015, Plaintiffs filed a Complaint against Defendants for wrongful death arising out of negligent actions. The initial complaint had Aramark, Aramark S&E, and Joshua Smith as Defendants. Joshua Smith was dismissed as a party by a Court Order on September 23, 2015, which was submitted in response to a stipulated motion. Defendant Aramark S&E filed an answer to the Complaint on October 6, 2015. Also on October 6, 2015, Aramark S&E filed a Motion for Judgment on the Pleadings Re: Jurisdiction. Although Aramark S&E agrees that the Court has jurisdiction over this case, Aramark S&E's motion requests the Court to enter an order stating that the Court lacks admiralty jurisdiction but has diversity jurisdiction.

## DISCUSSION

In its motion, Aramark S&E asks the court to make a judgment on the pleadings that the court lacks admiralty jurisdiction but has diversity jurisdiction over Plaintiffs' claims against Aramark S&E. Aramark S&E's sole argument for claiming that the court lacks admiralty jurisdiction over Plaintiffs' claims is that all of the allegedly negligent conduct by Aramark S&E occurred on land instead of on navigable waters. Although a full admiralty-jurisdiction analysis considers other factors in addition to the location of the tort, the court will limit its analysis in

this case to the location of the tort because that is the only factor argued by Aramark S&E in its motion and reply.

## STANDARD OF REVIEW

Defendant Aramark S&E filed the Motion for Judgment on the Pleadings Re: Jurisdiction pursuant to Federal Rule of Civil Procedure 12(c). A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The court accepts "all well-pleaded allegations of the complaint as true" and construes "them in the light most favorable to the non-moving party." *Id.* (internal quotation marks and citations omitted). The court grants a 12(c) motion "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff" to a denial of the 12(c) motion. *Id.* (internal quotation marks and citations omitted).

## ADMIRALTY JURISDICTION

Article III, Section 2 of the United States Constitution extends the judicial power of the United States "to all Cases of admiralty and maritime Jurisdiction." By statute, the "district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333 (2012). Providing the federal courts with exclusive jurisdiction over admiralty cases is founded on "the need for uniform rules governing navigation." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 677 (1982). However, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal statute) has defined." *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 273 (1972) (citation omitted).

To determine whether the exclusive admiralty jurisdiction of the federal courts extends to specific tort claims, courts originally looked solely to the locality of the tort. One of the early tests applied by the United States Supreme Court has been called the "strict locality test." *See Sisson v. Ruby*, 497 U.S. 358, 361 (1990). In *The Plymouth*, 70 U.S. 20 (1866), the Supreme Court first defined the strict locality test as follows: "the wrong and injury complained of must have been committed wholly upon the high seas or navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters to be within admiralty jurisdiction." *Id.* at 35. The test could be interpreted to strictly require that both the tortious conduct and the resulting damage or injury occur on navigable waters for the tort to be considered within admiralty jurisdiction. The Supreme Court's application of that test in *The Plymouth* case supports that strict interpretation. In *The Plymouth*, the Supreme Court held that a claim for damages to a wharf caused by a fire that started on a ship and spread to the wharf did not fall within admiralty jurisdiction because the damage occurred on the wharf, which is considered to be an extension of land. *Id.* at 36-37.

In subsequent cases, the Supreme Court identified "some of the problems with the locality test of maritime tort jurisdiction." *Executive Jet Aviation*, 409 U.S. at 255. For example, "serious difficulties with the locality test are illustrated by cases where the maritime locality of the tort is clear, but where the invocation of admiralty jurisdiction seems almost absurd." *Id.* These "serious difficulties" made the locality test over inclusive. Another problem was that the "ostensibly simple locality test was complicated by the rule that the injury had to be 'wholly' sustained on navigable waters for the tort to be within admiralty." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 532 (1995). This problem made the locality test under inclusive.

To help solve the problem with the locality test being over inclusive, the Supreme Court developed a second test for admiralty tort jurisdiction to go along with the locality test. "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Id.* at 534.

> The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (internal quotation marks and citations omitted). The addition of the connection test to the admiralty-jurisdiction analysis avoids "absurd" results such as invoking admiralty jurisdiction over an aircraft accident just because the aircraft fortuitously comes to rest in navigable waters. *See Executive Jet Aviation*, 409 U.S. at 255-57.

To help solve the problems with the locality test being under inclusive, Congress reversed the result reached by the Supreme Court in *The Plymouth* by passing the Admiralty Extension Act ("AEA") in 1948. Under the AEA, "[t]he admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101 (2012). According to the AEA, as long as the tortious conduct occurred on a vessel in navigable waters, the resulting injury or damage could occur on land and still be within admiralty jurisdiction. After passage of the AEA, the proper inquiry under the locality test portion of the admiralty-jurisdiction analysis is "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534.

Although the connection test and the AEA address some of the over- and under-inclusive problems with the original strict locality test, the locality test continues to be part of the analysis for admiralty jurisdiction in tort cases, and "borderline situations" still complicate the analysis. *See Executive Jet Aviation*, 409 U.S. at 255. For example, although the AEA clarifies the jurisdiction of torts when the tortious conduct occurs on a vessel in navigable waters but the damage or injury occurs on land, the AEA does not shed any light on situations, like this case, in which the tortious conduct occurs on land but the damage or injury occurs on navigable waters. Applying the strict locality test from *The Plymouth* in the "converse factual setting," *see id.*, one could argue that, because both the tortious conduct and the resulting damage or injury did not occur on navigable waters, the locality test is not met, and the tort is not subject to admiralty jurisdiction. However, even the strict rule from *The Plymouth* suggests that a tort could be within admiralty jurisdiction if, "at least, the substance and consummation" of the tort took place on navigable waters. 70 U.S. 20, 35 (1866). One potential interpretation of that phrase is that, if at least the damage or injury resulting from the tortious conduct occurred on navigable waters, a court could find that the tort meets the locality test for purposes of admiralty jurisdiction.

Supreme Court precedent subsequent to the decision in *The Plymouth* seems to have adopted this interpretation of the "substance and consummation" portion of the strict locality test that would find admiralty jurisdiction over torts even if only the damage or injury occurred in navigable waters. For example, in *Grubart*, the Supreme Court summarizes the strict locality rule from *The Plymouth* as follows: "the *injury* had to be 'wholly' sustained on navigable waters for the tort to be within admiralty" and later referenced "the location of the harm" when referring to the "application of the locality rule." *Grubart*, 513 U.S. at 532-33 (emphasis added). In another case, the Supreme Court provides examples of situations that would invoke "not only the

6

jurisdiction of the federal courts, but the full panoply of the substantive admiralty law as well" under the traditional locality test. *Executive Jet Aviation*, 409 U.S. at 255-256. One of the examples was "if a piece of machinery sustains water damage from being dropped into a harbor by a land-based crane," which involves land-based tortious conduct with the resulting damage occurring in navigable waters. Other courts have adopted this same interpretation. *See, e.g., Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005) (recognizing as "the clear law of our circuit that the situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs"); *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F. Supp. 920, 927 (E.D. La. 1977) (concluding that "for jurisdictional purposes, a tort occurs where the impact of the act or omission produces injury. Thus, where a force giving rise to an injury on the waters originates on land, the tort is maritime").

Aramark S&E argues that the Court cannot exercise admiralty jurisdiction over Plaintiffs' claims because Plaintiffs' allegations of negligent maintenance of the electrical power outlet pedestals and warning labels on the pedestals all involve land-based conduct, so the allegations do not meet the locality test portion of the admiralty jurisdiction analysis.

The court disagrees with Aramark S&E's arguments. As discussed above, the locality test portion of the admiralty-jurisdiction analysis has been extended and interpreted to cover a wider range of torts than may have initially been envisioned under some interpretations of the strict locality test. In its current form, the locality test can be met if either the tortious conduct begins on land but culminates with an injury on navigable waters or the tortious conduct begins on a vessel on navigable waters but culminates with an injury on the land. Although this interpretation of the locality test can potentially encompass many torts that have no place within admiralty

jurisdiction, the connection test portion of the analysis will remove most of the otherwise absurd results from remaining within admiralty jurisdiction.

Accepting the well-pleaded allegations in the Complaint as true, Aramark S&E's conduct in this case caused Alec McQueen to be shocked and drown in navigable waters. Because the alleged injury in this case occurred on navigable waters, the court concludes that the locality test of the admiralty-jurisdiction analysis has been met. Because Aramark S&E's motion was based solely on the locality test portion of the analysis, the court concludes that Aramark S&E's motion should be denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Aramark S&E's Motion for Judgment on the Pleadings Re: Jurisdiction is DENIED.

DATED this 30th day of March, 2016.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge