**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| WHITNEY MCQUEEN and JENNY WESENBERG, individually and as Heirs to the Estate of ALEC MCQUEEN, DECEASED,<br><br>            **Plaintiffs,**<br><br>v.<br><br>ARAMARK CORPORATION, a Delaware corporation; ARAMARK SPORTS AND ENTERTAINMENT SERVICES LLC, a Delaware limited liability company; and KAP ELECTRIC, INC., a Utah Corporation;<br><br>            **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>**Case No.  2:15-CV-492-DAK-PMW**<br><br><br><br>**District Judge Dale A. Kimball**<br><br>**Magistrate Judge Paul M. Warner** |

District Judge Dale A. Kimball referred this matter to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court is Whitney McQueen et al.'s (collectively, "Plaintiffs") Motion to Compel Production of Work Orders.[2]  The court has carefully reviewed the motion and memoranda submitted by the parties.  Pursuant to Civil Rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds oral argument would not be helpful and is unnecessary.  *See* DUCivR 7-1(f).

---

[1] *See* docket nos. 22 & 30.

[2] *See* docket no. 27.

## RELEVANT BACKGROUND

The current discovery dispute involves purported work orders reflecting electrical work performed at Bullfrog Marina 'A' Dock ("'A' Dock") prior to the to the June 10, 2014 incident at issue in this case, which resulted in the death of Alec McQueen ("McQueen").  On August 15, 2014, Plaintiffs sent a preservation letter to Aramark Sports and Entertainment Services, LLC's ("Defendant") placing it on notice that litigation was imminent and that documentation relevant to the incident was to be preserved.[3]

During his February 16, 2016 deposition, Defendant's employee, Joe Ligon ("Ligon"), recalled the existence of two work orders identifying electrical work performed on 'A' Dock prior to McQueen's death on June 10, 2014.[4]  Ligon stated that he thought there were "only two work orders done on the dock" for "electrical upgrades" on "the entire 'A' Dock."[5]  But Ligon also stated that he was "not sure" about that but it was his "[b]est recollection" in the moment.[6]  Ligon further testified that after one year, Defendant destroys all maintenance documents as part of its business practice.

Ten days after Ligon's deposition, Plaintiffs attempted to obtain those work orders through a Request for Production of Documents.[7]  Specifically, Request for Production No. 15 sought the production of "a complete copy of any and all work orders, correspondence or other documentation reflecting work performed on ['A' Dock] for the two years preceding the incident

---

[3] Docket no. 27, Exhibit 1 at 12.

[4] Docket no. 32 at 3–5.

[5] Docket no. 27, Exhibit 1 at 10.

[6] Docket no. 27, Exhibit 1 at 11-12.

[7] Docket no. 67, Exhibit 1.

in this case."[8]  In response, Defendant indicated that it had already produced all responsive

documents and that the work orders identified by Ligon "don't exist."[9]

The parties then conferred by telephone.  Defendant explained that Ligon had been

mistaken at his deposition regarding the two work orders.  Defendant also explained the efforts

that Ligon and others had made to locate those work orders and other responsive discovery.

Defendant offered to produce work orders generated *after* McQueen's death, as well as a

declaration from Ligon stating that he was mistaken in his recollection of the two work orders.

Plaintiffs declined and indicated they would be filing a motion to compel.

In their motion to compel, Plaintiffs seek the production of the work orders at issue as

well as attorneys fees.  Defendant responds by asserting that Plaintiffs mischaracterize Ligon's

testimony and that the work orders cannot be produced because they never existed.  Attached to

its opposition memoranda, Defendant provided Ligon's declaration, as well as the work orders

created after McQueen's death.  In their reply brief, Plaintiffs assert that the work orders

submitted with Ligon's deposition were responsive to their initial discovery requests but that

Defendant failed to provide them or supplement their discovery responses.  Plaintiffs further

argue that Defendant produced a Purchase Order Report demonstrating that KAP Electric

("KAP")[10] had performed work on the marina that involved the replacement of two electrical

receptacles eight days before McQueen's death.

---

[8] *Id*. at 3-4.

[9] Docket no. 32 at 8.

[10] On June 21, 2016, Plaintiffs filed an amended complaint that added KAP as a defendant.  *See* docket no. 42.

In an order dated September 2, 2016, the court instructed the parties to provide supplemental briefing in relation to the instant motion.[11]  Both parties were instructed to address Rule 37(e) of the Federal Rules of Civil Procedure with regard to Defendant's failure to preserve the work orders that are the subject of the instant motion after it received Plaintiffs' August 15, 2014 preservation letter.  Defendant was further ordered to: (1) include a detailed explanation as to the steps it had taken to preserve evidence after receipt of Plaintiffs' August 15, 2014 preservation letter, (2) to explain why it had failed to provide documents responsive to Plaintiffs' discovery requests or supplement those responses until filing its memorandum in opposition to the instant motion, and (3) to explain the discrepancy between the Purchase Order Report showing that electrical work was done prior McQueen's death and Defendant's statement that work orders preceding his death "do not exist and have never existed."[12]

In response to the court's Order to Show Cause, Defendant conceded that electronically stored information ("ESI") and other physical documents were destroyed because Defendant failed to relay necessary preservation instructions to the appropriate individuals.[13]  Defendant proffers that it did not realize that it failed to inform its employees about the litigation hold until December 2015.  As a result, the earliest work order preserved was dated December 30, 2014—over six months after McQueen's death.  Nevertheless, Defendant asserts that although its maintenance work orders predating the incident were destroyed, "the lost work orders are not relevant to this case, and Plaintiffs are not prejudiced by the loss in any material way."[14]  And,

---

[11] *See* docket no. 57

[12] Docket no. 32 at 10.

[13] Docket no. 66 at 11.

[14] Docket no. 66 at 6.

Defendant claims, the destroyed information can still be obtained in one or both of two ways: (1) through the testimony of its maintenance managers, Jeff Banfill ("Banfill") and Tad Schurr ("Schurr"), who would testify that there was no electrical maintenance on the shore power pedestals on 'A' Dock prior to McQueen's death;[15] and/or (2) through discovery from KAP because KAP performed all major electrical work at the marina, and presumably would have records of the work it had done.  Defendant also contends that it did not previously produce the work orders attached to Ligon's declaration because Plaintiffs' discovery request did not seek information from after McQueen's death and in the telephone conference Plaintiffs' counsel indicated that he did not want them.  Defendant explains the discrepancy between the Purchase Order Report and lack of corresponding work orders by explaining that, as a practice, it did not generate work orders for the work that KAP performed, it only created them for routine maintenance performed by Defendant's employees.

In their supplemental brief, Plaintiffs argue that sanctions are appropriate for Defendant's failure to preserve ESI, work orders, and any other discovery that should have been preserved from the litigation hold.  Plaintiffs contend that Defendant's failure to preserve records was intentional and that Plaintiffs have been prejudiced as a result.  While Plaintiffs assert that this case will be tried in a bench trial before Judge Kimball, it appears that Defendant has requested a trial by jury.  This matter is set for a five-day jury trial beginning on July 10, 2017.[16] Nevertheless, Plaintiffs seek an adverse inference (either as a jury instruction or as Judge Kimball adopting it during a bench trial) that Defendant "recently performed maintenance,

---

[15] Docket no. 66 at 6.

[16] *See* docket nos. 15 and 46.

inspected[,] repaired[,] or otherwise performed work on the shore power pedestal prior to the death of McQueen."[17]

Further, on November 23, 2016, Plaintiffs provided an additional supplemental brief in which Plaintiffs request terminating sanctions in light of Banfill's recent deposition.[18]

## DISCUSSION

### I.   Changes to Deposition Testimony Under Rule 30(e)

As an initial matter, to the extent that Defendant is attempting to alter Ligon's deposition testimony through his declaration under Rule 30(e) of the Federal Rules of Civil Procedure, that request is **DENIED**.  Ligon was deposed on February 16, 2016.  On April 20, 2016, Defendant submitted Ligon's declaration with its opposition memorandum.  However, under Rule 30(e), the deponent has 30 days after being notified that the transcript or recording is available in which to review and/or make changes to his testimony.  *See* Fed. R. Civ. P. 30(e).  Defendant's attempt was made well after the thirty day deadline had passed.  However, even assuming the proposed changes had been provided timely, "material changes to deposition testimony [which controverts] the original testimony" are not acceptable.  *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (finding the purpose of Rule 30(e) to be an allowance for the correction of any substantive error made by "the reporter") (citation omitted).  "The Rule cannot be interpreted to alter what was said under oath." *Id*.  This prevents a deponent from "return[ing] home and plan[ing] artful responses" after a deposition.  *Id*.  Thus, the court refuses to permit Defendant to substitute Ligon's declaration in place of his deposition testimony.

---

[17] Docket no. 67 at 4.

[18] *See* docket no. 68.

## II.        Spoliation Sanctions Under Rule 37

Rule 37(e) of the Federal Rules of Civil Procedure provides the framework for analyzing

spoliation of ESI.  Rule 37 provides:

> If electronically stored information that should have been preserved in the *anticipation or conduct of litigation* is lost because a *party failed to take reasonable steps to preserve* it, and it *cannot be restored or replaced through additional discovery*, the court:
>
> > (1) upon *finding prejudice* to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon *finding that the party acted with the intent to deprive another party of the information's use in the litigation* may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37 (emphasis added).  The Tenth Circuit has applied the same Rule 37 analysis to

non-ESI spoliation issues.  *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th

Cir. 2009).

The court concludes, and Defendant concedes, that Defendant failed to take reasonable

steps to preserve both ESI and paper documents after receiving Plaintiffs' preservation letter.

Nevertheless, Defendant asserts that the unpreserved records are not relevant to this litigation

and the loss has "no effect whatsoever on [P]laintiffs' ability to pursue their claims."[19]

Unfortunately, the relevance of the lost records is impossible for the court to determine, and the

---

[19] Docket no. 66 at 6.

loss of documentation pertaining to the shore power at issue in this case may very well have an effect on Plaintiffs' ability to pursue their claims.

Defendant also argues that the information sought by Plaintiffs can be obtained or replaced through discovery from KAP and/or through the testimony of Banfill and Schurr.  The court is not persuaded by this argument.  Defendant's logic presumes that KAP has not destroyed its records in a regular record destruction process.  Additionally, Defendant could have used, or attempted to use, a contractor other than KAP to perform the work at issue here, which would make any efforts to obtain the relevant information from KAP futile.  Furthermore, the testimony of Banfill and Schurr does not replace the destroyed documents.  It is unlikely they will be able to remember the specific contents of each destroyed work order.  And Banfill's recent deposition demonstrates that he does not remember specific work orders or how many times electrical work was performed, or receptacles replaced at the marina between August 2014 and November 2015. The bottom line is that Defendant should have preserved the relevant records but failed to do so.

In addition, Defendant indicates that it has unsuccessfully attempted to restore the ESI relevant to the work orders during the time frame at issue.  If it were only ESI that had been lost, the court would consider ordering a forensic examination in an attempt to recover what Defendant claims is unrecoverable.  However, it is not just ESI that has been lost as a result of Defendant's failure to preserve its records; as admitted by Defendant, "most" of the work orders, such as the ones now at issue, are "filled out by hand," placed "in boxes for the maintenance men," and after a year, "hit the shredder."[20]  These "paper records are gone,"[21] and cannot be

---

[20] Docket no. 27, Exhibit 1, at 6.

[21] Docket no. 66 at 23.

restored through any forensic effort to recover ESI.  The court concludes that Defendant failed to take reasonable steps to preserve ESI and other documentation potentially relevant to this litigation after receiving the preservation letter, the records are unrecoverable through additional discovery, and Plaintiffs were prejudiced by the destruction of documents.

The court must next determine whether Defendant acted "with the intent to deprive" Plaintiffs of the records that were destroyed.  Fed. R. Civ. P. 37(e)(2).  Likewise, when "the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith."  *Turner*, 563 F.3d at 1149.  "'Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.'"  *Id.* (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).  Bad faith in the discovery misconduct context is generally found with a "showing of willful destruction of evidence."  *Browder v. City of Albuquerque*, No. CIV 13-0599 RB/KBM, 2016 WL 3397659, at *8 n.6 (D. N.M. May 9, 2016).  "Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner*, 563 F.3d at 1149.

While the intentional destruction of evidence would demonstrate Defendant's consciousness of a weakness in its case, the court cannot say that Defendant's actions were intentional or that its conduct establishes bad faith.  As such, the court finds that Defendant acted with gross negligence, which is insufficient to show bad faith or intent.  *See Browder*, 2016 WL 3397659, at *8.  Thus, the court concludes that a lesser sanction is appropriate.  The court orders that the parties will be permitted to present evidence to the jury regarding the spoliation of the work orders and ESI and to argue any inferences they want the jury to draw.  The jury will not, however, be specifically instructed regarding any presumption or inference regarding the

destruction of those materials.  To avoid impinging on the trial judge's purview in presiding over and conducting the trial, this court leaves to the trial judge to determine the appropriate mechanism for permitting the presentation of the evidence and argument at trial on this issue.

### III.    Attorney Fees & Costs

Plaintiffs request the costs and attorneys fees they incurred in filing this motion and supplemental briefing.  Rule 37 provides that if a motion seeking discovery "is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The court concludes that Defendant's failure to preserve records was not substantially justified, and court intervention in this matter was necessitated by Defendant's conduct.  Accordingly, Plaintiffs' request for attorneys fees is **GRANTED**, and Defendant is hereby ordered to pay Plaintiffs' reasonable expenses incurred in relation to the instant motion and supplemental briefing.  Within fourteen (14) days of the date of this order, Plaintiffs shall submit a cost memorandum detailing the costs and fees incurred in bringing this motion.  Upon the filing of Plaintiffs' cost memorandum, Defendant may file a response to it within seven (7) days.  Based on the parties' submissions, the court will then determine an appropriate and reasonable sanction award.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's "request" to alter Ligon's deposition testimony through his declaration is **DENIED**.  Plaintiffs' motion to compel and request for sanctions is **GRANTED**.  This court leaves to the trial judge to determine the appropriate mechanism for

permitting the presentation of the evidence and argument at trial on this issue as set forth above. Furthermore, this court has determined that an award of attorneys fees and costs to Plaintiffs is appropriate.  Thus, Plaintiffs are ordered to submit a cost memorandum detailing the attorney fees and other expenses incurred in filing this motion within (14) fourteen days of the date of this order.  Defendant may file a response to Plaintiffs' cost memorandum within (7) seven days after receiving it.  Upon review of the parties' respective submissions, the court will then determine a reasonable sanction award amount.

       **IT IS SO ORDERED**.

       DATED this 29th day of November, 2016.

                    BY THE COURT:

                    PAUL M. WARNER
                    United States Magistrate Judge